USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/14/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
BIBLIOTECHNICAL ATHENAEUM, American :
University of Beirut :
:
                    Plaintiff, :
:        20-cv-4068 (LJL)
    -v- :
:        OPINION AND ORDER
AMERICAN UNIVERSITY OF BEIRUT, :
:
                  Defendant. :
:
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

    Defendant American University of Beirut ("Defendant" or "AUB") moves, at Dkt. No. 25, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint, at Dkt. No. 24 ("Am. Compl."), filed by Plaintiff Bibliotechnical Athenaeum ("Plaintiff" or "BA"). Dkt No. 25. For the following reasons, the motion to dismiss is granted.

## BACKGROUND

    Familiarity with the Court's March 19, 2021 Opinion and Order dismissing BA's complaint is assumed. *See* Dkt. No. 20; *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 2021 WL 1061994, at *1 (S.D.N.Y. Mar. 19, 2021). BA is an Israeli corporation with its principal place of business in New York, New York. Am. Compl. ¶ 2. It claims that its "primary purpose is to fight against anti-Israeli discrimination." *Id.* ¶ 16. AUB is an accredited university located in Beirut, Lebanon. *Id.* ¶¶ 8-9. It has a New York office where it "regularly holds activities," *id*. ¶ 8, and it is chartered by the New York Board of Regents and accredited by the Middle States Commission on Higher Education. *Id*. ¶ 7.

    The lawsuit grows out of a "virtual career fair" AUB held for its students in late 2019. *Id*. ¶ 10. The career fair was advertised as "a great opportunity [for employers] to attract the best

AUB students and professional alumni wherever they are around the world," and AUB touted "[t]he event [as] offer[ing] amazing features such as a virtual booth, CV search, direct chat with candidates, webinars, posting vacancies and interviewing all from the comfort of [employers'] office[s] without the cost and hassle of travel."  *Id*. ¶ 11.  In addition, AUB offers normal career services to potential employers, including American employers, who wish to recruit AUB students to perform services in Lebanon, New York, or elsewhere.  *Id*. ¶ 14.

In late 2019, BA signed up for AUB's career services portal in order to recruit a paid intern as well as to participate in the virtual career fair.  *Id*. ¶ 15.  It claims that it intended to recruit a paid intern "to assist with promoting commercial activity to promote international trade and goodwill."  *Id*. ¶ 16.  The registration form includes an acknowledgment of the terms and conditions of AUB's career portal, including "that any vacancy submission will be subject to the prior approval of AUB" and that AUB reserved the right to cancel any registration or job post at any time.  Dkt. No. 16-1 at 3.  BA's registration was initially accepted by AUB and it was allowed to post an advertisement with AUB's career services computer system and to begin the process to register for the virtual career fair notwithstanding its New York address.  Am. Compl. ¶ 17.  AUB subsequently asked to schedule a phone call with BA but BA declined and instead volunteered: "Thanks for your e-mail.  By the way, Bibliotechnical is an Israeli organization.  Is this a problem?"  Dkt. No. 16-4; Am. Compl. ¶¶ 17-18.  After BA stated to AUB that it was an Israeli corporation, AUB locked it out of the computer system and refused to communicate further regarding participation in the virtual career fair, denying BA access to that fair.  Am. Compl. ¶ 18.

BA originally brought suit under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), as well as under New York State and New York City human rights laws.

In its March 19, 2021 Opinion and Order, the Court dismissed BA's complaint without prejudice. *See* Dkt. No. 20 at 17. The Court held that the complaint failed to allege facts supporting Plaintiff's claim that AUB engaged in discrimination on the basis of BA's national origin. It reasoned that BA's choice to incorporate in Israel did not alone establish a national origin for purposes of Title VI: "The country in which a company chooses to incorporate is not, and is not alleged to be, a function or an indication either of the national origin of its constituents or of its mission." *Bibliotechnical Athenaeum*, 2021 WL 1061994, at *5. Addressing Plaintiff's argument that it necessarily had an Israeli national origin because it was engaged in the "fight against anti-Israeli discrimination," the Court concluded that the assumption was offensive: "To embrace the notion that only a corporation whose identity is based on Israeli national origin can be a supporter in the fight against anti-Israeli discrimination is to embrace the very national origin stereotyping that the federal anti-discrimination laws were intended to prevent." *Id*. at *6.

      The Court concluded that BA did not have a cognizable claim under Title VI because there was "no well-pled allegation that the denial [of BA's access to AUB's job fair] was based on national origin as opposed to BA's country of incorporation," which is not a protected characteristic under Title VI. *See id*.[1] As a result, the Court did not address Defendant's argument that the complaint alleged extraterritorial conduct outside the reach of Title VI. The Court declined to exercise supplemental jurisdiction over Plaintiff's state and city law claims. Keeping in mind that a dismissal without prejudice following the filing of a first complaint is disfavored and that Plaintiff did not previously have the benefit of the Court's views, the Court

---

[1] The Court reserved on the distinction between whether the claim was properly dismissed because BA was outside the zone of interests of the statute or because it did not state a claim for discrimination based on national origin. *See id*.

gave Plaintiff another chance to replead and add details responsive to the Court's opinion and dismissed the Complaint without prejudice.

## DISCUSSION

The Amended Complaint does not add any further factual detail about Plaintiff's corporate identity, its business activities, its owner, director, officers, employees, or other constituents. It simply alleges, as the original complaint alleged, that BA "is an Israeli corporation with a principal place of business in the State of New York, County of New York." Am. Compl. ¶ 2, that it is "duly authorized by the State of New York and maintains its principal office in Manhattan," and that is "primary purpose is to fight against ani-Israeli discrimination," *id*. ¶ 16. Plaintiff merely substitutes his defective Title VI claim with a new claim—for violation of 42 U.S.C. § 1981 ("Section 1981"), which is "derived from both Section 1 of the Civil Rights Act of 1866 . . . and Section 16 of the Voting Rights Act of 1870." *Anderson v. Conboy*, 156 F.3d 167, 172 (2d Cir. 1998).

Defendant argues that the Amended Complaint should be dismissed because (1) Section 1981 does not prohibit discrimination against a corporation based on its country of incorporation; (2) Plaintiff has failed to plead "but-for" causation; and (3) Section 1981 has no extraterritorial effect and the Amended Complaint pleads no relevant conduct that occurred in the United States.

Section 1981 provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

4

"The statute, as amended by the Civil Rights Act of 1991, prohibits both public and private actors from discriminating on the basis of race or alienage in the making and enforcement of contracts, including employment contracts." *Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (citing *Conboy*, 156 F.3d at 170.  Moreover, as the Court noted in its prior Opinion and Order, the Second Circuit has held that a corporation may bring a claim under federal antidiscrimination law where it was the victim of discrimination based on an imputed identity deriving from the identities of its constituent shareholders, directors, officers, or employees, or based on its mission and activities. *See Bibliotechnical Athenaeum*, 2021 WL 1061994, at *4 (collecting cases).  This principle applies equally to claims brought under Title VI and Section 1981.  Indeed, *Hudson Valley Freedom Theater, Inc. v. Heimbach*, the Second Circuit case that first articulated this principle, addressed claims brought under Section 1981. *See* 671 F.2d 702, 703 (2d Cir. 1982).  Although Plaintiff has not identified any case in which a corporate plaintiff has sued under Section 1981 based on an imputed alienage identity, there is no reason that the same logic applied in *Hudson Valley* and its progeny to claims based on imputed racial identity should not equally apply to imputed alienage identity.  Under *Hudson Valley*, if a small business or any United States corporation were denied the opportunity to make or enforce a contract because its owners, directors, and employees were non-citizens, it would be entitled to the same protection under Section 1981 as if the discrimination were leveled directly at those owners, directors, and employees.

Plaintiff's claim here fails, however, because it has not in fact alleged discrimination based on any imputed identity.  Liberally construed, it at most alleges discrimination based on BA's state of incorporation.  The Court is aware of no authority that supports the proposition that

such discrimination is legally actionable under Section 1981.[2]  Indeed, the precedent supporting the right of corporations to sue for discrimination establish that such right derives, ultimately, from discrimination based on characteristics possessed by individuals—where, for example, a corporation is discriminated against because of the racial identity of its shareholders or directors. *See Bibliotechnical Athenaeum*, 2021 WL 1061994, at *4 (collecting cases).[3]  As the Court previously observed, there are many reasons why a corporation may choose to incorporate outside the United States—an offshore location may afford better tax treatment, liability protection, or advantageous trade treatment.  *See id*. at 5 (collecting cases).  The choice of a corporation's country of incorporation says nothing necessarily about its mission or the identity of its constituents.  *Cf. Hudson Valley*, 671 F.2d at 706.  Like Plaintiff's original complaint, the Amended Complaint does not contain facts necessary to establish that BA has acquired an identity protected by the federal anti-discrimination law.

The Court need not reach the questions whether the Amended Complaint adequately pleads but-for causation or whether the alleged conduct is beyond the territorial reach of the statute.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state and city law claims for the reasons stated in its prior Opinion and Order.  *See Bibliotechnical Athenaeum*, 2021 WL 1061994, at *7.

---

[2] As stated in the Court's prior Opinion and Order, this case does not implicate federal anti-boycotting law.  *See Bibliotechnical Athenaeum*, 2021 WL 1061994, at *1.

[3] The legislative history and purpose of Section 1981 underscore its operation as proscribing discrimination based on characteristics possessed by individuals.  The law's "prohibition against alienage discrimination" is "derived from Section 16 of the [Voting Rights Act of 1870]," the "immediate purpose" of which "was to alleviate the plight of Chinese immigrants in California who were burdened by state laws restricting their ability to work, removing their right to give testimony at trial, and otherwise discouraging them from immigrating to and living in California."  *Conboy*, 156 F.3d at 173 (citing Charles J. McClain, Jr., *The Chinese Struggle for Civil Rights in Nineteenth Century America: The First Phase*, 1850–1870, 72 Cal. L. Rev. 529, 539–64 (1984)).

## CONCLUSION

Plaintiff has now had an opportunity to amend with the benefit of the Court's views as expressed in its prior Opinion and Order, and its allegations still fail to state a claim for relief. In the Amended Complaint, Plaintiff does not identify any facts that suggest the possibility of a cure to the fatal defect in its pleading. Any further amendment would be futile. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("[I]t is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.") (internal citations omitted); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (repleading would be futile when the "problem with [the pleader's] causes of action is substantive"). The Amended Complaint is dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate all pending motions and close the case.

SO ORDERED.

Dated: June 14, 2021
New York, New York

                                          LEWIS J. LIMAN
                                        United States District Judge